IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

JACKIE WALKER, )
)
      Plaintiff, )
)
v. ) CIVIL ACTION NO.: CV507-088
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
      Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Morton J. Gold, Jr. ("ALJ" or "ALJ Gold"), denying her claim for Disability Insurance Benefits and Social Security Income ("SSI") benefits. Plaintiff urges the Court to reverse the ALJ's decision and enter an award finding Plaintiff disabled, or, in the alternative, to remand this case for further consideration of the evidence. Defendant asserts that the Commissioner's decision should be affirmed.

Plaintiff protectively filed for Disability Insurance and SSI benefits on July 19, 2005, alleging that she became disabled on September 1, 2001, as the result of limitations from pain caused by fibromyalgia and blindness in her left eye. (Tr. at 15). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. On May 22, 2007, the ALJ held a hearing in Waycross, Georgia, at which Plaintiff appeared and testified. G. Mark Leaptrot, a vocational expert, also testified at the hearing. (Id.).

AO 72A
(Rev. 8/82)

The ALJ determined that Plaintiff was not disabled. (Tr. at 23). The Appeals Council denied Plaintiff's request for review of the ALJ's denial of benefits, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Tr. at 5-7).

Plaintiff, born on October 23, 1953, was fifty-three (53) years old when the ALJ issued his decision. (Tr. at 54). She has a tenth grade education. (Tr. at 55). She has past relevant work experience as a retail sales clerk. (Tr. at 22).

## ALJ'S FINDINGS

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the plaintiff is not engaged in such activity, then the second inquiry asks whether the claimant has a medically severe impairment or combination of impairments. Yuckert, 482 U.S. at 140-41. If the claimant's impairment or combination of impairments is not "severe," then disability benefits are denied. Yuckert, 482 U.S. at 141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, subpt. P. App. 1; Yuckert, 482 U.S. at 141. If the impairment meets or equals one of the listed impairments, then the plaintiff is presumed disabled. Id. If the impairment does not meet or equal one of the listed

impairments, then the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing her past relevant work. Id. If the claimant is unable to perform her past relevant work, then the final step of the evaluation process determines whether she is able to perform other work in the national economy, considering her age, education, and work experience. Yuckert, 482 U.S. at 142. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

In the instant case, the ALJ followed the sequential process to determine that Plaintiff did not engage in substantial gainful employment after September 1, 2001. At Step Two, the ALJ determined that Plaintiff had the severe impairments of fibromyalgia and blindness in her left eye. (Tr. at 17). However, the ALJ also determined, at Step Three, that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Tr. at 18). The ALJ found that Plaintiff has the residual functional capacity to perform work at the medium exertional level, provided that her work activities do no require her to individually climb ladders, ropes, and scaffolding, or crouch for more than two and one half hours per eight hour workday. (Tr. at 19). At the Fourth Step, the ALJ found that Plaintiff is not disabled because she is capable of performing her past relevant work as a retail sales clerk. (Tr. at 22).

## ISSUES PRESENTED

The issues presented in this review are whether the ALJ:

I.   properly discounted the opinion of the Plaintiff's treating physician; and

II.  properly considered Plaintiff's subjective complaints of pain.

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F. 2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F. 3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F. 2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F. 3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F. 2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

I.  **Substantial evidence supports ALJ Gold's decision to discount the opinion of Plaintiff's treating physician.**

Plaintiff contends that the ALJ erred by disregarding the opinion of her treating physician, Dr. Jill Goggans. (Doc. No. 20, p. 7). Plaintiff further contends that the ALJ did not consider all of the evidence when he evaluated Dr. Goggans' assessment. (Id. at 8).

Plaintiff asserts that the ALJ did not properly credit Dr. Goggans' findings regarding the effects of her impairments. Plaintiff further asserts that the activities of daily living noted by the ALJ do not render Dr. Goggans' physical capacities assessment invalid. (Id. at 9). Defendant contends that ALJ Gold provided sufficient grounds for discounting Dr. Goggans' opinion regarding Plaintiff's ability to work. (Doc. No. 23, pp. 4-6).

A treating physician's opinion is entitled to substantial weight unless good cause not to do so exists. Edwards v. Sullivan, 937 F. 2d 580, 583 (11th Cir. 1991); Jones v. Bowen, 810 F. 2d 1001, 1005 (11th Cir. 1986). There is good cause when the medical opinion is conclusory, unsupported by objective medical findings, or not supported by evidence from the record. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997); Edwards, 580 F. 2d at 583. When the Commissioner rejects the opinion of the treating physician, he must give "explicit and adequate" reasons for the rejection. Elam v. Railroad Retirement Board, 921 F. 2d 1210, 1215 (11th Cir. 1991). The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefore." Sharfarz v. Bowen, 825 F. 2d 278, 279 (11th Cir. 1987).

ALJ Gold found that Plaintiff has the severe impairments of fibromyalgia and blindness in her left eye. (Tr. at 17). The ALJ observed that the Mayo Clinic suggested that Plaintiff continue her progressive conditioning program after she was seen for fibromyalgia-like musculoskeletal tenderness and pain. The Mayo Clinic diagnosed Plaintiff with tension mylalgias. ALJ Gold noted that Plaintiff was seen at the Mayo Clinic several years later, after she reported back problems and increased pain in the hip area. Plaintiff was diagnosed with bilateral hip and lower back pain and fibromyalgia symptoms. The ALJ further noted that x-rays of the cervical spine and hips were normal; x-rays of the

AO 72A
(Rev. 8/82)

lumbar spine showed some minor changes at the L5-S1 facet joints; and laboratory results, including CBC, electrolytes, C-reactive protein, ANA, and rheumatoid factor, were all normal. (Tr. at 17).

The ALJ observed that Dr. Goggans saw Plaintiff for a follow-up concerning her fibromyalgia. The ALJ noted that the treatment records show that nothing had changed; neurological examinations showed no difficulties in motor strength, gait, or sensation; and musculoskeletal examinations of upper and lower extremities showed no edema, clubbing, or cyanosis. ALJ Gold observed that Dr. Goggans' diagnosis was fibromyalgia/myalgia, condition unchanged. ALJ Gold remarked that Plaintiff stated at her next follow-up that her fibromyalgia was a problem, that she would sometimes hurt like she had the flu, and that she would occasionally have sharp stabbing pains that would send her to bed. ALJ Gold further remarked that Plaintiff reported taking two pain medications per day. The ALJ observed that an examination of Plaintiff showed tenderness with palpation along the left trapezius area and no gross or focal deficits were noted. (Tr. at 17).

ALJ Gold noted that Plaintiff was born with a significant impairment in the left eye that is attributed to congenital cataracts. (Tr. at 17). The ALJ further noted that Plaintiff has been diagnosed in the past with hiatal hernia, thyroid cyst, kidney stones, and osteopenia, but remarked that there is no evidence that these impairments are severe. The ALJ observed that Plaintiff's gastroesophageal reflux disease is treated and well-controlled with medication. The ALJ further observed that there is no evidence that Plaintiff's minor L5-S1 facet degenerative changes cause any significant functional limitations. ALJ Gold remarked that Plaintiff was diagnosed with anxiety disorder and

histrionic personality disorder, but that no evidence indicates that these impairments cause any significant functional limitations. ALJ Gold further remarked that Dr. Marc Eaton consultatively examined Plaintiff and noted evidence of exaggeration and malingering of cognitive deficits and her subjective experiences of pain. The ALJ adopted the State Agency psychologist's opinion that Plaintiff's mental impairments are non-severe. (Tr. at 18).

ALJ Gold found that Plaintiff did not have an impairment, or combination of impairments, that meets or medically equals a listed impairment. (Tr. at 18). ALJ Gold further found that Plaintiff has the residual functional capacity to perform medium exertional work that does not require her to individually climb ladders, ropes, and scaffolding, or crouch for more than two and one half hours per eight hour workday. The ALJ noted that Plaintiff's left eye blindness precludes her from performing jobs where depth perception and binocular vision are crucial. The ALJ further noted that Plaintiff is able to drive, cook, and perform other dangerous occupations despite her partial blindness. ALJ Gold observed that he considered all symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence. The ALJ noted that he considered other evidence pursuant to 20 C.F.R. § 404.1529 because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone. (Tr. at 19).

The ALJ observed that Plaintiff testified that she started working fewer hours in 1999 after her health started declining. Plaintiff reported receiving no worker's compensation or unemployment benefits. The ALJ noted that Plaintiff alleged that she was unable to work due to fibromyalgia, for which she had received continuing treatment

since it was diagnosed in the 1990's. Plaintiff further alleges that doctors told her that pain medication is the only treatment for her condition. The ALJ observed that Plaintiff reported that the pain medication makes her sleepy. ALJ Gold further observed that Plaintiff rated her pain as a 7/10. The ALJ remarked that Plaintiff alleges that, as a result of her impairments, she can sit no more than 45 minutes, stand no more than 20 minutes, walk no more than 30 minutes, and lift/carry no more than 10 pounds. Plaintiff further alleges that she has to lie down at least 4 to 5 times daily for approximately 20 to 30 minutes. ALJ Gold noted that despite these significant functional limitations, Plaintiff testified that she cooks, washes dishes, washes clothes, shops, attends church occasionally, watches television, waters the flowers, drives around town, and reads the Bible. ALJ Gold further noted that Plaintiff reported taking a trip to Japan in 2003, taking a trip to California in 2007, and visiting her grandchildren once or twice a year. (Tr. at 20).

ALJ Gold considered the evidence of record, and found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. The ALJ noted that Plaintiff has been diagnosed with fibromyalgia, which might preclude her from performing some activities. However, the ALJ opined that there is no evidence to conclude that Plaintiff's condition is of such severity that it would cause her alleged level of pain and functional limitations. ALJ Gold noted that Plaintiff's treatment records for 2002, 2005, 2006, and 2007 showed no significant changes in her condition. (Tr. at 20). ALJ Gold observed that other factors were used in assessing Plaintiff's credibility. ALJ Gold remarked that Plaintiff described activities of daily living that are inconsistent with her complaints of

disabling pain and functional limitations. ALJ Gold further remarked that the consultative psychological examiner noted that there was evidence that Plaintiff was exaggerating her subjective experiences of pain. (Tr. at 21).

The ALJ considered the opinion of the State Agency Consultants, as well as other treating, examining, and non-examining medical sources. ALJ Gold observed that the State Agency Consultants determined that Plaintiff could do medium exertional work, with occasional crouching and climbing of ladders, ropes, and scaffolds. The ALJ remarked that in determining Plaintiff's residual functional capacity, he gave great weight to the opinions of the State Agency Consultants because they were fully justified and consistent with other substantial objective medical evidence in the case record. (Tr. at 21).

ALJ Gold observed that the treating physician, Dr. Goggans, completed a medical opinion to do work-related activities. ALJ Gold noted that Dr. Goggans opined that Plaintiff could lift/carry less than 10 pounds; sit, stand, and/or walk less than 2 hours total in an 8 hour workday; and that she had other significant limitations. Dr. Goggans further opined that Plaintiff was totally disabled. The ALJ observed that Dr. Goggans indicated that the functional limitations were secondary to Plaintiff's fibromyalgia. The ALJ discounted Dr. Goggans' medical opinion because he opined that the course of treatment pursued by the doctor was not consistent with that which would be expected if Plaintiff were as disabled as the doctor reported. The ALJ observed that there were no noted significant changes in Plaintiff's condition when she was last seen for a follow-up for her fibromyalgia in 2007. The ALJ further observed that neurological examinations showed no gross or focal deficits and that examinations of the upper and lower extremities showed no edema, clubbing or cyanosis. ALJ Gold noted that there were no trigger

AO 72A
(Rev. 8/82)

9

points indicated in any of the examinations. ALJ Gold opined that the objective findings of these examinations do not justify the level of pain or functional limitations indicated by Dr. Groggans' assessment. The ALJ observed that Plaintiff reported activities of daily living that are inconsistent with Dr. Groggans' functional assessment. (Tr. at 21).

ALJ Gold determined that Plaintiff was able to return to her past relevant work as a retail sales clerk because it does not require the performance of work-related activities precluded by her residual functional capacity. The ALJ noted that the vocational expert testified at the hearing that Plaintiff's past relevant work included retail sales clerk, which is a semi-skilled, light exertional level job. The ALJ further noted that the vocational expert testified that a hypothetical person with Plaintiff's residual functional capacity could return to work as a retail sales clerk ALJ Gold concurred with the vocational expert and found that Plaintiff was able to perform her past relevant work.

ALJ Gold had "good cause" to discount Dr. Goggans' opinion that Plaintiff was unable to work. See Edwards, 937 F. 2d at 583. ALJ Gold stated "with particularity" "the reasons" he did not give Dr. Goggans' conclusions controlling weight. See Sharfarz, 825 F. 2d at 279. The ALJ discounted Dr. Goggans' opinion because the course of treatment she pursued was inconsistent with what would be expected if Plaintiff were as disabled as Dr. Goggans indicated. ALJ Gold stated that the objective findings do not support the level of functional limitations indicated by Dr. Goggans' assessment. The ALJ remarked that Plaintiff's reported activities of daily living are inconsistent with Dr. Goggans' assessment. (Tr. at 21). Furthermore, the ALJ noted that he did not find Plaintiff's alleged symptoms entirely credible (Tr. at 20) and that great weight was given to the medical opinions of the State Agency Consultants because they were fully justified and consistent

with other substantial objective medical evidence in the record. (Tr. at 21). While the ALJ did not specifically discuss the findings of Dr. Tidmore and Dr. Galea, their findings only support the conclusion that Plaintiff suffered from fibromyalgia, not that Plaintiff was limited to the extent found by Dr. Goggans. Accordingly, ALJ Gold's decision to not give Dr. Goggans' opinion substantial weight is supported by substantial evidence and is based on the appropriate legal standards. See Cornelius, 936 F. 3d at 1145.

## II. Substantial evidence supports the ALJ's findings regarding Plaintiff's pain allegations.

Plaintiff asserts that the ALJ erred by finding that her subjective complaints of pain were not credible. (Doc. No. 20, p. 7). Plaintiff contends that the ALJ failed to adequately develop the record by not ordering a consultative examination that would have assisted him in making a proper credibility determination. Plaintiff further contends that substantial evidence does not support the ALJ's credibility determination because he did not discuss the records of the treating psychiatrist, counselor, and the treating physician regarding her continued complaints of pain. Plaintiff asserts that the ALJ failed to consider that her persistent efforts to obtain pain relief enhanced her credibility. (Id. at 10). Plaintiff further asserts that ALJ Gold failed to consider the side effects of her medications. (Id. at 11). Defendant contends that the ALJ had a sufficient basis for discounting Plaintiff's allegations. (Doc. No. 23, pp. 6-7).

In order to award benefits based on subjective complaints of pain, the following is required: (1) evidence of an underlying medical condition and either (2) objective medical evidence which confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221,

1223 (11th Cir. 1991); Sewell v. Bowen, 792 F.2d 1065, 1068 (11th Cir. 1986). The Commissioner must consider a plaintiff's subjective allegations of pain if the above standard is met. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). If a plaintiff "testifies as to his subjective complaints of disabling pain and other symptoms . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir.1995)). "Although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court." Id. (internal citation omitted). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210-11 (quoting Foote, 67 F.3d at 1561).

The ALJ considered Plaintiff's subjective complaints of pain and provided adequate and express reasons for discounting her complaints. Sufficient evidence exists to support the ALJ's decision that Plaintiff retained the residual functional capacity to perform her past relevant work. See Dyer, 395 F. 3d at 1210. ALJ Gold noted that medical records show that Plaintiff's condition was largely unchanged. (Tr. at 20). ALJ Gold observed that Plaintiff's descriptions of her activities of daily living are inconsistent with her complaints of disabling pain and functional limitations. The ALJ further observed that the consultative psychological examiner noted that there was evidence that Plaintiff exaggerated her subjective experiences of pain. (Tr. at 21). The ALJ is not required to order a consultative examination unless the record establishes that such an examination

is necessary for the ALJ to render a decision. Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002) (citations omitted). A consultative examination was not needed because there was sufficient evidence in the record for the ALJ to render a decision. Plaintiff's assertions that the ALJ did not properly consider the impact that the side effects of her medications had on her ability to work or that her persistent efforts to obtain pain relief enhanced her credibility are without merit. Contrary to Plaintiff's assertions, Social Security Ruling 96-7p does not require the ALJ to discuss either her longitudinal efforts to seek medical treatment or the side effects of her medication. Social Security Ruling 96-7p merely lists them among the factors an ALJ is to consider when evaluating the credibility of a claimant's statements regarding symptoms. Social Security Ruling 96-7p requires the ALJ's decision to contain specific reasons for his credibility finding, which ALJ Gold has done here. Thus, Plaintiff's assertions are without merit because substantial evidence supports ALJ Gold's findings regarding her subjective allegations of pain.

## CONCLUSION

Based on the foregoing reasons, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 12th day of February, 2009.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE